IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>SEMCRUDE L.P., ET AL.<br><br>Debtors.<br><br>COTTONWOOD PARTNERSHIP, LLP, ET AL.,<br><br>Appellants,<br><br>v.<br><br>THOMAS L. KIVISTO, ET AL.,<br><br>Appellees. | Chapter 11<br>Bk. No. 08-11525 (BLS)<br><br><br><br><br><br><br><br><br>Civ. No. 11-1174-SLR |

**MEMORANDUM ORDER**

At Wilmington this 15th day of November, 2012, having reviewed the appeal taken by Cottonwood Partnership, L.L.P.; Dunbar Family Parnership, L.P.; Rosen Family, L.L.C.; Warren F. Kruger; Katherine A. Kruger; David S. Kruger; and Kathryn E. Shelley from the opinion and order of the Bankruptcy Court dated October 7, 2011 (D.I. 1-1; D.I. 1-2), and the papers filed in connection with the appeal therefrom;

IT IS ORDERED that said appeal is granted in part and denied in part, for the reasons that follow:

1. **Background.** On July 22, 2008, SemGroup L.P.[1] and its affiliated debtors (collectively, "debtors" or "SemGroup") filed a chapter 11 petition in the United States

---

[1] SemGroup L.P. is the parent company of SemCrude, L.P., the entity that the bankruptcy court refers to in its opinion. (D.I. 10 at CW 24)

Bankruptcy Court for the District of Delaware ("bankruptcy court"). (B.D.[2] 1) On October 28, 2009, the bankruptcy court entered an order ("confirmation order") confirming debtors' fourth amended joint plan ("confirmed plan") of affiliated debtors pursuant to chapter 11 of the Bankruptcy Code, which established a litigation trust ("the Trust") to pursue and settle claims of SemGroup. (D.I. 10 at CW 64 ¶ 40, CW 1272 ¶ 11.1, CW 1293 ¶ 20.7)

2. **The Trust/Kivisto litigation.** On February 17, 2009, an appointed committee of the debtors' unsecured creditors ("the Committee")[3] filed suit in bankruptcy court ("the Trust/Kivisto litigation") against Thomas L. Kivisto, former CEO of SemGroup L.P., and certain former SemGroup officers, as well as Westback Purchasing Co., LLC ("Westback"). (*Id.* at CW 776-838) The Committee asserted thirty claims related to fraudulent transfer, breach of fiduciary duty, breach of contract, and unjust enrichment. (*Id.*) The parties reached the terms of a settlement agreement, which the bankruptcy court approved on November 19, 2010. (*Id.* at 771-75).

3. **The Trust/PWC litigation.** On June 25, 2010, the Trust filed suit in the Tulsa County District Court in Oklahoma ("the Trust/PWC litigation") against PricewaterhouseCoopers LLP ("PWC"), SemGroup's pre-bankruptcy auditor, alleging professional negligence, breach of fiduciary duty, and violation of the Oklahoma Accountancy Act in connection with PWC's audit of SemGroup's 2006 and 2007 consolidated financial statements. (D.I. 13 at 4) The claim for violation of the

---

[2] References the bankruptcy court docket.
[3] On December 16, 2009, after the confirmed plan became effective, the bankruptcy court entered an order approving the substitution of the Trust for the Committee as plaintiff. (D.I. 1-1 at 2; D.I. 18 at TKA 96)

Oklahoma Accountacy Act has been dismissed, but the Trust has continued to prosecute the professional negligence and breach of fiduciary claims in Oklahoma state court. (*Id.* at 5)

4. **Appellants' Oklahoma litigation.** On December 22, 2010, Cottonwood Partnership, L.L.P.; Dunbar Family Parnership, L.P.; Rosen Family, L.L.C.; Warren F. Kruger; Katherine A. Kruger; David S. Kruger; and Kathryn E. Shelley (collectively, "appellants" or "plaintiffs") filed suit against Kivisto, PWC, and John Does 1-25 (collectively, "Oklahoma defendants") in the Tulsa County District Court in Oklahoma (the "appellants' Oklahoma litigation"). (D.I. 10 at CW 430-60) Each appellant formerly held limited partnership units in SemGroup. On the theory that the Oklahoma defendants owed duties to appellants individually, appellants seek monetary damages from PWC for professional negligence and violation of the Oklahoma Accountancy Act, and from Kivisto for negligent misrepresentation, fraud, and breach of fiduciary duty. (*Id.*)

5. On January 26, 2011, PWC removed appellants' Oklahoma litigation to the U.S. District Court for the Northern District of Oklahoma. (*Id.* at CW 418-28) Appellants filed a motion to remand the case to the Oklahoma state court, which the federal court granted on August 26, 2011. (*Id.* at CW 1205-07)

6. On May 4, 2011, Kivisto filed an emergency motion ("motion to enjoin") in the bankruptcy court to enforce the provisions of the order confirming the debtors' fourth amended joint plan and to enforce the provisions of the confirmed plan and other relief. (*Id.* at CW 1-363)

3

7. The Trust and SemGroup joined Kivisto in the motion to enjoin. (*Id.* at CW 364-66, CW 367-68) The Trust averred that the claims asserted by appellants are derivative claims that belong to the Trust and, pursuant to the confirmed plan and confirmation order, cannot be brought by any other party. (*Id.*)

8. After briefing and oral argument, the bankruptcy court entered an opinion and order on October 7, 2011, granting the motion to enjoin. (D.I. 1-1; D.I. 1-2) The bankruptcy court found that it has subject matter jurisdiction, the matter is a core proceeding, and the claims in appellants' Oklahoma litigation are derivative causes of action alleging injury to SemGroup in its corporate capacity. (D.I. 1-1)

9. On October 21, 2011, appellants timely filed their notice of appeal from the bankruptcy court's opinion and order. (D.I. 1)

10. **Standard of Review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). The district court's appellate responsibilities

4

are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

11. Appellants assert that the bankruptcy court lacked jurisdiction over the subject matter of the motion to enjoin. (D.I. 9 at 15-17) With respect to PWC, they also aver that the bankruptcy court should have deferred to the Oklahoma District Court's decision remanding appellants' Oklahoma litigation to state court for lack of federal jurisdiction. (*Id.* at 11-12) Furthermore, appellants aver that the bankruptcy court erred in finding that their claims against Kivisto and PWC are derivative claims alleging injury to SemGroup in its corporate capacity. (*Id.* at 6-10, 13-15)

12. **Jurisdiction of bankruptcy court.** Bankruptcy courts have limited subject matter jurisdiction, governed by 28 U.S.C. §§ 1334 and 157. *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004). Pursuant to § 1334, that jurisdiction may extend to four types of title 11 matters: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Id.* at 372 F.2d at 162 (internal quotation marks omitted). Under § 157, the first three categories of cases are considered "core proceedings." *Id.* (citing 28 U.S.C. §§ 157(b)(1)). The fourth category of cases -- "related to" proceedings -- are regarded as "non-core" proceedings. *Id.* (citing 28 U.S.C. § 157(c)(1)).

5

13. The distinction between a core proceeding and a non-core proceeding determines the manner in which a bankruptcy court may act. A bankruptcy court has full adjudicative power to "hear and decide" core proceedings, subject to appellate review by the district court. *See In re Resorts Int'l*, 372 F.2d at 162 (citing 28 U.S.C. § 158(a), (c)). However, for non-core proceedings, a bankruptcy court does not have full adjudicative power; it must submit findings of fact and conclusions of law to the district court, subject to de novo review. *See* 28 U.S.C. § 157(c).

14. By statute, core proceedings include "orders to turn over the property of the estate." 28 U.S.C. § 157(b)(2)(E). Courts in this district have interpreted the statute such that "matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541 are core proceedings." *Williams v. McGreevey (In re Touch Am. Holdings, Inc.)*, 401 B.R. 107, 117 (Bank. Del. 2009). The court in *In re Touch America Holdings* was faced with motions that required it to determine whether certain claims brought by the debtor against the defendants belonged to the debtor or were transferred to the trustee upon plan confirmation. The court found that the motions required a declaration of whether the legal claims were "property of the estate," so it held that the motions were core issues. *Id.*

15. In the instant case, whether or not the motion to enjoin is a core issue requires the court to look into the subject matter of the motion, not the subject matter underlying the appellants' Oklahoma litigation. The bankruptcy court followed the reasoning in *In re Touch America Holdings*, which found that a dispute over which entity

-- the corporation or the shareholders -- could assert claims against former officers and directors of the debtor corporations was a core proceeding. *Id.* Similarly, in the instant case, Kivisto and the parties that joined the motion to enjoin seek a determination that the claims in appellants' Oklahoma litigation were once property of SemGroup's estate and now belong to the Trust under the confirmation order and confirmed plan; the dispute is over which party -- the Trust or appellants -- can assert claims against Kivisto and PWC. (D.I. 10 at CW 2) Therefore, the motion to enjoin presents a core proceeding.[4]

16. Because the motion to enjoin presents a core issue, the court does not need to determine whether there was related-to jurisdiction.[5] *See In re Touch Am. Holdings,*

---

[4] The court does not find persuasive appellants' assertion that finding the motion to enjoin to be a core proceeding would be an overly expansive view of what constitutes "proceedings to determine property of the estate." *See* D.I. 19 at 2-3 (citing dicta in *Beard v. Braunstein*, 914 F.2d 434 (3d Cir. 1990)). The court in *Braunstein* was faced with a different type of matter -- a claim by a trustee in bankruptcy seeking to recover money under a pre-petition "garden variety contract" from a third party. *Braunstein*, 914 F.2d at 444-45. The matter in *Braunstein* would be analogous to the Trust bringing a claim to recover money from PWC, which it has done in the Trust/PWC litigation. In the instant case, the motion to enjoin does not seek monetary damages from a third party but a determination of the Trust's property rights to bring legal claims under a plan approved by the bankruptcy court.

[5] Appellants assert that there is no close nexus to the bankruptcy proceeding sufficient to warrant subject matter jurisdiction because the confirmed plan took effect a few years ago, and Kivisto has settled the Trust/Kivisto litigation with the Trust. However, as the Third Circuit has pointed out, "the 'close nexus' standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core 'related to' proceeding in the post-confirmation context." *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007). It is not invoked when a court has subject matter jurisdiction over a core proceeding, as the bankruptcy court has in this case. *Id.*

*Inc.*, 401 B.R. at 118 (noting that the court is not required to address the "close nexus" test when the issues before it are core bankruptcy issues).

17. Furthermore, the court finds that the bankruptcy court acted within its discretion when it declined to give deference to the Oklahoma District Court's decision and considered the motion to enjoin with respect to PWC. Under 28 U.S.C. § 1334(c), a court **may** abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law," or **must** abstain "[u]pon a timely motion of a party in a proceeding based upon State law or a State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section . . . ."[6] Because the bankruptcy court correctly concluded it had core jurisdiction over the motion to enjoin, there was no basis for mandatory abstention. As for permissive abstention, appellants make no showing as to why the bankruptcy court erred by not abstaining from considering a motion seeking to protect the Trust's assets. The appellants only cite to *In re Victory Markets, Inc.*, 196 B.R. 6 (Bank. N.D.N.Y. 1996), in which a bankruptcy court in a district without any precedential guidance gave deference to another district court's interpretation of a Bankruptcy Code provision. Here, the issue that the Oklahoma District Court addressed was different from the issue before the bankruptcy court regarding what claims constitute property of the SemGroup estate. The Oklahoma District Court, in a minute

---

[6] The court reviews putative errors with respect to permissive abstention under the abuse of discretion standard. *See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002). It reviews putative errors with respect to mandatory abstention de novo. *See Stow v. Flaherty*, 436 F.3d 209, 212 (3d Cir. 2006).

8

order, addressed the separate issue of whether it had jurisdiction over the merits of the claims in appellants' Oklahoma litigation; the Trust was not a party in that case. (D.I. 10 at CW 1205-07). Therefore, this court does not find that the bankruptcy court abused its discretion in declining to exercise permissive abstention.

18. **Standard for derivative or direct claims.** The court will next turn to whether appellants' claims are derivative causes of action or direct, individual causes of action. The parties do not dispute that Oklahoma state law governs this analysis. The Oklahoma Supreme Court has adopted "the universal rule that the remedial rights of minority stockholders with respect to wrongs committed against the corporation by the directors in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation." *Dobry v. Yukon Elec. Co.*, 290 P.2d 135, 137 (Okla. 1955). The court reasoned:

> [I]t is a well-established general rule that a stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporation, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike.

*Id.* at 137. Therefore, under Oklahoma law, a plaintiff must assert a loss "in addition to the loss sustained by the corporation" in order to properly plead a direct claim against third parties. *Id.* Determining whether a stockholder's claim is derivative or direct turns "solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any

9

recovery or other remedy (the corporation or the stockholders, individually)?"[7] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039.

19. Appellants challenge the bankruptcy court's application of law to the facts to find that their injuries are "no different from the injury suffered by SemCrude" and therefore derivative. (D.I. 1-1 at 13) As this issue presents a mixed question of law and fact, the court applies plenary review of the bankruptcy court's interpretation of legal precepts and its application of those precepts to the facts.[8] *See Mellon Bank, N.A.*, 945 F.2d at 642.

20. **Claims against PWC.** Appellants assert that their claims of professional negligence and violation of the Oklahoma Accountancy Act against PWC are not derivative because the injuries PWC caused them are distinct from those experienced by SemGroup; therefore, appellants are entitled to receive any recovery on their claims. (D.I. 9 at 11-15) Appellants assert that PWC, as an auditor, owed duties to them for

---

[7] Oklahoma courts consider the analyses undertaken in other jurisdictions to be persuasive. *See Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993). The parties agree that the two-prong *Tooley* test applies.

[8] Appellants assert that the bankruptcy court erred by not individually examining the claims against Kivisto and PWC. However, the court does not find this argument persuasive for reversible error. The bankruptcy court identified the specific allegations with respect to each claim and the related allegations in the complaint ("complaint") filed in appellants' Oklahoma litigation. The bankruptcy court organized its opinion with respect to claims asserted against Kivisto and claims asserted against PWC.

purposes of the professional negligence claim.⁹ (*Id.* at 14) Appellants also argue that they "fall within the class of persons protected by the Oklahoma Accountancy Act" because PWC issued its opinion letters directly to them. (*Id.*) However, appellants have not made any factual allegations under either claim that any duty PWC owed to appellants was **distinct** from that owed to SemGroup or other limited partners. For example, appellants allege in their complaint that "Plaintiffs fall **within the group of individuals and entities** for whose guidance PWC intended to supply the audit data;" PWC failed to disclose harmful facts "to SemGroup's limited partners, **like the Plaintiffs**, who might have intervened to save the company;" "Plaintiffs **and other limited partners** were denied the opportunity to put an end to Kivisto's activities and save SemGroup" due to PWC's failure to fully disclose Kivisto's inappropriate conduct and speculative trading strategy; and "Plaintiffs **and other limited Partners** were left in the dark as SemGroup hurtled toward insolvency" due to PWC's conduct. (D.I. 10 at CW 336-37 ¶ 4, CW 342 ¶ 36, CW353 ¶ 59, CW355 ¶ 64) (emphasis added) Therefore, the court agrees with the bankruptcy court's finding that, with respect to PWC, the harm appellants suffered was in fact the same harm suffered by SemGroup and that any recovery in appellants' Oklahoma litigation would belong to SemGroup's estate. (D.I. 18 at TKA 204-06) The court affirms the bankruptcy court's determination

---

⁹ The court recognizes that, under Oklahoma law, "an auditor would be liable to a limited group of people embracing (1) those for whose guidance the auditor intended to supply the audit data and (2) those to whom the auditor knows his client intended to supply the audited financial statements." *Stroud v. Arthur Anderson & Co.*, 37 P.3d 783, 794 (Okla. 2001). Under this standard, appellants have asserted that "PWC owed Plaintiffs the highest duty of care, as Plaintiffs were known and foreseeable users of the financial statements and other information that PWC examined, audited, and validated." (D.I. 10 at CW 355 ¶ 64)

11

that both of appellants' claims against PWC are derivative of the Trust's claims against PWC.

21. **Fraud and negligent misrepresentation claims against Kivisto.**[10] With respect to Kivisto, the bankruptcy court considered specific allegations in appellants' complaint, which alleged that "Kivisto's self-dealing and speculative trading strategy caused SemCrude to file for bankruptcy;" "Kivisto improperly used SemCrude's funds to finance his personal trading activity;" and "Kivisto engaged in high-risk trades on behalf of SemCrude, which exposed the company to significant risk." (D.I. 10 at CW 340 ¶ 19, CW 343-45 ¶¶ 33-39, CW 350-53 ¶¶ 52-58) However, appellants also alleged in their complaint that Kivisto made fraudulent and negligent misrepresentations to them **personally** to induce them to make capital contributions. The bankruptcy court's opinion mentions this allegation but does not properly consider it in its analysis. (D.I. 1-1 at 13-14) For example, appellants allege that

> Kivisto was particularly aggressive in his efforts to induce Plaintiffs to make their 2006 capital contributions. . . . On or about May 25, 2006, during a lunch meeting at Southern Hills Country Club, Kivisto approached certain of the Plaintiffs and made several statements clearly intended to induce them to make these capital contributions. . . . Kivisto repeatedly emphasized to Plaintiffs that failing to make the capital contribution would cause Plaintiffs substantial financial loss due to his view that the value of their SemGroup shares would increase substantially in the near term. Of course, Kivisto neglected to disclose the nature of the Company's and Westback's trading programs or the ever-increasing Westback receivable.

---

[10] Because the elements for fraud and negligent misrepresentation are substantially similar under Oklahoma law, the court addresses these claims together to determine whether the claims are derivative of the Trust's claims. *See Roberson v. Paine Webber*, 998 P.2d 193, 197 (Okla. App. 1999) (providing the elements for fraud); *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 991 (W.D. Okla. 1994) (providing the elements for negligent misrepresentation).

(D.I. 10 at CW 348-49 ¶ 48) There is case law applying *Tooley* that suggests that claims for non-disclosure may constitute direct claims in circumstances where a shareholder can "'demonstrate that the duty breached was owed to [him or her] and that he or she can prevail without showing an injury to the [partnership].'" *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, Civ. No. 762-N, 763-N, 2005 WL 2130607, at *12 (Del. Ch. Aug. 26, 2005) (quoting *Tooley*, 845 A.2d at 1039); *see also Dieterich v. Harrer*, 857 A.2d 1017, 1027-28 (Del. Ch. 2004) (declining to dismiss as derivative an entire fairness claim for non-disclosures relating to a merger). If, as appellants have sufficiently alleged, Kivisto owed them a duty distinct from that owed to all shareholders, appellants may be able to demonstrate entitlement to a recovery separate form SemGroup.[11] Therefore, the court reverses and remands the bankruptcy court's finding that appellants' fraud and negligent misrepresentation claims against Kivisto are derivative.

22. **Breach of fiduciary duty claim against Kivisto.** Appellants' complaint furthers alleges that Kivisto owed fiduciary duties to appellants that "arose due to the relationship between Kivisto and Plaintiffs, due to the trust and confidence reasonably placed by Plaintiffs in the integrity and loyalty of Kivisto." (D.I. 10 at CW 360-61 ¶ 91) This fiduciary relationship allegedly arose, at least in part, due to "the length and nature of Kivisto's relationship with Plaintiffs." (*Id.*) In light of these allegations, as well as the

---

[11] Neither the settlement in the Trust/Kivisto litigation nor the confirmed plan bars appellants from asserting **direct** claims against Kivisto. Appellants' equity interest and standing to bring claims **on behalf of** SemGroup were extinguished by the confirmed plan and confirmation order. (D.I. 10 at CW 64 ¶ 40, CW 254 ¶¶ 20.1, 20.7) The settlement in the Trust/Kivisto litigation released the Trust's claims against Kivisto and represented that the Trust "is the holder by assignment and owns 100% of all claims, demands, causes of action, or suits **of the Debtors and Reorganized Debtors** against [Kivisto]." (D.I. 18 at TKA 119-21 ¶¶ 6, 8)

13

allegations discussed above regarding the fraud and negligent misrepresentation claims against Kivisto, appellants have sufficiently alleged that Kivisto owed a direct fiduciary duty to them, a duty distinct from that owed to other shareholders. If appellants demonstrate both the duty and injury, they would be entitled to recover separately from SemGroup. Thus, the court reverses and remands the bankruptcy court's finding that the fiduciary duty claim against Kivisto is derivative.

23. **Conclusion.** With respect to the bankruptcy court's decision granting Kivisto's motion to enforce the provisions of the order confirming debtors' fourth amended joint plan and to enforce the provisions of the confirmed plan and for other relief, the court affirms the subject matter jurisdiction of the bankruptcy court and the classification of the matter as a core proceeding. For the reasons stated above, the court affirms the bankruptcy court's finding that appellants' claims against PWC are derivative and reverses and remands the bankruptcy court's finding that appellants' claims against Kivisto are derivative.

_____
United States District Judge